**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 20, 2016

LETTER TO COUNSEL

RE: Carlos Torres v. Commissioner, Social Security Administration;
Civil No. SAG-15-3294

Dear Counsel:

On October 29, 2015, Plaintiff Carlos Torres petitioned this Court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 13, 14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision in part, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

Mr. Torres filed a claim for Disability Insurance Benefits ("DIB") on August 18, 2011. (Tr. 202). He alleged a disability onset date of January 1, 1996.[1] *Id*. His claim was denied initially and on reconsideration. (Tr. 141-44, 148-49). A video hearing was held on December 16, 2013, before an Administrative Law Judge ("ALJ"). (Tr. 97-125). Following the hearing, the ALJ determined that Mr. Torres was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 79-90). The Appeals Council denied Mr. Torres's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Mr. Torres suffered from the severe impairments of "myofascial pain dysfunction, tension headaches, migraine headaches, right Temporaomandibular Joint Disorders (TMJ) capsulitis, low back pain, and osteoarthritis of the right TMJ." (Tr. 84). Despite these impairments, the ALJ determined that Mr. Torres retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except he could walk or stand 2 out of 8 hours and sit 6 out of 8 hours. He needed a cane for balance. He required a sit-stand option with the option to get up every 15 to 30 minutes to

---

[1] Mr. Torres's date last insured is December 31, 2000. (Tr. 82). Therefore, he must establish disability in the period between his alleged onset date, January 1, 1996, and December 31, 2000.

> stretch without leaving the workplace. He needed to avoid concentrated exposure to all lung irritants. He could only occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. He could only occasionally bend and stoop, but could never kneel, crouch, or crawl. He was limited to simple, routine repetitive tasks one to three steps. He could have only occasional social interaction with others, and no jobs involving confrontation or negotiation or interacting with large numbers of the public.

(Tr. 85-86). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Torres could perform jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. (Tr. 89).

Mr. Torres raises three arguments on appeal: (1) that the ALJ failed to properly evaluate his impairments at step three of the sequential evaluation process; (2) that the ALJ erroneously assessed his RFC; and (3) that the ALJ failed to properly develop the administrative record. Each argument is addressed below. In addition to Mr. Torres's arguments, I have also reviewed the ALJ's assessment of Mr. Torres's neurogenic bladder at step two and find that remand is warranted. In remanding for additional explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Mr. Carroll is not entitled to benefits is correct or incorrect.

Citing the Fourth Circuit's holdings in *Fox v. Colvin*, 652 F. App'x 750 (4th Cir. 2015) (*per curiam*), and *Radford v. Colvin*, 734 F.3d 288, 292 (4th Cir. 2013), Mr. Torres first asserts that the ALJ's step three analysis warrants remand because the ALJ failed to "reference any Impairment Listing, or . . . compare any of the medical evidence to any criteria of any Listing," and thus "failed to provide any meaningful discussion which applied findings to the Listing of Impairments." Pl. Mem. at 5. In *Fox*, the Fourth Circuit clarified the evidentiary requirements needed to support an ALJ's finding at step three of the sequential evaluation. Step three requires the ALJ to determine whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings describe each of the major body system impairments that the Agency "consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a). In *Fox*, the ALJ's listing analysis stated:

> Although the claimant has 'severe' impairments, they do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations. (20 CFR, Subpart P, Appendix 1). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are equivalent to those of any listed impairment of the Listing of Impairments. In reaching this conclusion, the undersigned has considered, in particular, sections 9.00(B)(5) and 11.14.

2015 WL 9204287, at *4.

The Fourth Circuit held that the ALJ's analysis was deficient in *Fox* because it consisted of conclusory statements and did not include "any 'specific application of the pertinent legal

requirements to the record evidence.'" *Id.* (quoting *Radford v. Colvin*, 734 F.3d 288, 291-92 (4th Cir. 2013)). That is, the ALJ did not apply any findings or medical evidence to the identified disability listings and "offered nothing to reveal *why* he was making his decision." *Radford*, 734 F.3d at 295 (emphasis in original). The Fourth Circuit also rejected the notion that failure to engage in meaningful analysis at step three could constitute harmless error, even where the evidence of record otherwise demonstrated that the claimant did not meet a listing. *Fox*, 2015 WL 9204287, at *4. Rather, the *Fox* Court emphasized that it is not this Court's role to "engage[ ] in an analysis that the ALJ should have done in the first instance," or "to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Id.* at *4-*5. The Court noted that it could not conduct a meaningful review "when there is nothing on which to base a review." *Id.* at *4.

The instant case is distinguishable. As this Court has noted, under existing Fourth Circuit law, an ALJ only has to identify a listing and compare the evidence to the listing requirements where there is ample evidence to suggest that the listing is met. *See Sterrette v. Comm'r, Soc. Sec. Admin.*, 2016 WL 953225, at *2 (D. Md. Mar. 11, 2016) (citing *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000)) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)); *see also Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999 (noting that the "duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments"). While *Fox* provided a new standard for the analysis that must be present after a listing has been identified, it did not alter existing law with respect to the criteria for identifying a listing in the first instance. Here, the record does not contain ample evidence to suggest that any listing has been met. Indeed, Mr. Torres fails to cite record evidence to argue otherwise. Similarly absent from his motion is any suggestion of which listings should have been discussed, or any assertion that he met their criteria. Thus, the ALJ's step three analysis was proper, and remand on this basis is not warranted.

Second, Mr. Torres argues that the ALJ erroneously assessed his RFC. Pl. Mem. at 7. Specifically, he contends that the ALJ failed to "set forth a narrative discussion" explaining her conclusions with "specific medical facts and nonmedical evidence." *Id.* at 8; SSR 96–8p, 1996 WL 374184, at *7. Critically, SSR 96-8P requires an ALJ to consider the record on a function-by-function basis, but "does not require [her] to produce such a detailed statement in writing." *Taylor v. Astrue*, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012). Instead, an RFC assessment is adequate if it includes "a narrative discussion of [the] claimant's symptoms and medical source opinions." *Id.* (quoting *Thomas v. Comm'r, Soc. Sec.*, 2011 WL 6130605, at *4 (D. Md. Dec. 7, 2011) (alterations in original).

Here, with the exception of her failure to discuss Mr. Torres's neurogenic bladder, addressed below, I find that the ALJ's RFC analysis was sufficient. Specifically, the ALJ noted Mr. Torres's testimony regarding his physical symptoms, including his "back pain, migraines, and problems with fainting," as well as his past records of "jaw pain and a diagnosis of disequilibrium." (Tr. 86-87). The ALJ also examined records documenting Mr. Torres's mental

impairments, including his major depression and posttraumatic stress syndrome. *Id*. However, the ALJ cited substantial support from the clinical record and medical opinion evidence that belied the nature and severity of Mr. Torres's limitations. Most significantly, the ALJ noted that "[Mr. Torres's] myofascial pain was stable" with medication, and that his physical examinations revealed adequate strength in his lower extremities "and normal posture." *Id*. In addition, the ALJ acknowledged Mr. Torres's reports of his ongoing difficulty with sleeping, nightmares, and paranoia, but also assessed a GAF score of 55, "which is consistent with only *moderate* symptoms or moderate difficulties in social, occupational, or school functioning." (Tr. 88) (emphasis in original). Moreover, the ALJ noted that Mr. Torres's asthma severity level was "consistent with *mild* paroxysms of asthmatic type breathing . . . occurring several times a year with no clinical findings between attacks." (Tr. 87) (emphasis in original). Regarding Mr. Torres's mental limitations, the ALJ noted that during medical visits Mr. Torres "did not seem to be severely depressed," and also that his treatment records show on multiple occasions that "[his] depression was stable." *Id.* The ALJ also considered evidence of Mr. Torres's posttraumatic stress syndrome, including the medical opinion evidence of Mr. Torres's examining psychiatrist, but found that the record failed to "show a diagnosis of PTSD prior to the date last insured." *Id*. Indeed, the ALJ noted that Mr. Torres's psychiatrist, Dr. Peebles, reported that Mr. Torres was performing all activities of daily living, (Tr. 736), and was "able to exercise and lose weight," (Tr. 701). Importantly, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is other evidence that may support Mr. Torres's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Accordingly, I find that the ALJ supported her RFC assessment with substantial evidence from the objective medical record and opinion evidence. Therefore, remand is unwarranted.

Third, Mr. Torres argues that the ALJ failed to properly develop the record. This argument is similarly without merit. Specifically, Mr. Torres asserts that the ALJ did not adequately question him during the hearing regarding his impairments and functional limitations. Pl. Mem. at 10. Contrary to Mr. Torres assertion, it is the claimant's burden through the first four steps of the sequential evaluation to present evidence establishing disability. *See Pass*, 65 F.3d at 1203. I note that Mr. Torres was represented by counsel at the hearing. It was incumbent on counsel to ensure that the ALJ had all relevant evidence before her. The ALJ questioned Mr. Torres's counsel about the completeness of the record and the accuracy of its reflection of Mr. Torres's alleged impairments. *See* (Tr. 111-114). When asked specifically by the ALJ whether "the medical evidence support[ed] [Mr. Torres's alleged impairments that have prevented him from working] going all the way back to the alleged onset date of 1996," counsel responded in the affirmative. (Tr. 113). This representation thus belies Mr. Torres's assertion that the ALJ failed to properly develop the record. The ALJ would have had no reason to believe that she needed to procure additional information to complete the record, and expressly provided time for counsel to ask Mr. Torres questions, indicating that they could be leading questions if necessary. (Tr. 107). Accordingly, the ALJ did not err in this respect.

However, remand is warranted on other grounds. Mr. Torres asserts, in one sentence, that the ALJ's RFC assessment was deficient because she "failed to consider [his] neurogenic bladder." Pl. Mem. at 8. An ALJ is required to discuss each diagnosis that is supported by objective medical evidence in the claimant's record. See *Boston v. Barnhart*, 332 F. Supp. 2d 879, 885 (D. Md. 2004); *Albert v. Astrue*, 2011 WL 3417109, at *2 (D. Md. July 29, 2011). Here, the ALJ failed to consider whether Mr. Torres's neurogenic bladder warranted any limitations or explain why no such limitations were necessary.[2] Substantial evidence from the medical record supports the conclusion that Mr. Torres suffered from a neurogenic bladder during the relevant disability period. Most significantly, numerous urological evaluations noted that Mr. Torres suffered from a neurogenic bladder. (Tr. 278, 281, 283, 284, 812). Physician notes further detail Mr. Torres's condition and the fact that no treatment was available to alleviate his symptomology. (Tr. 280-81). Moreover, Mr. Torres noted in the record that his neurogenic bladder forced him to self-catheterize every day. (Tr. 282).

Nevertheless, this Court has held that an ALJ's failure to consider the severity of a diagnosis at step two is harmless where the ALJ corrects his or her error by "fully consider[ing] the impact" of the neglected evidence when determining the claimant's RFC. *See Burroughs v. Comm'r, Soc. Sec. Admin.*, 2015 WL 540719, at *1 (D. Md. Feb. 9, 2015). Here, however, the ALJ did not consider the impact of Mr. Torres's neurogenic bladder in her RFC assessment. The ALJ is required to consider all of a claimant's impairments, both severe and non-severe, in assessing the claimant's RFC. *See* 20 C.F.R. § 404.1545(a)(2). The ALJ's brief mention of Dr. Garges's December, 1995 letter does not constitute a sufficient functional assessment of Mr. Torres's neurogenic bladder, because the ALJ did not consider whether any functional limitations applied to his condition.[3] Nor did the ALJ conclude that the record failed to show the need from any such limitations. Accordingly, the ALJ failed to consider Mr. Torres's neurogenic bladder diagnosis and remand is required as a result. *See Copes v. Comm'r, Soc. Sec. Admin.*, 2015 WL 9412521, at *2 (D. Md. Dec. 21, 2015).

For the reasons set forth herein, Mr. Torres's Motion for Summary Judgment, (ECF No. 13), is DENIED and Defendant's Motion for Summary Judgment, (ECF No. 14), is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

---

[2] Indeed, the ALJ made only one single reference to Mr. Torres's bladder condition. *See* (Tr. 87) (noting that "Dr. Garges also noted headaches, a constellation of gastrointestinal issues, and urologic symptoms including a neurogenic bladder.").

[3] For example, a neurogenic bladder could potentially render Mr. Torres unable to perform certain jobs for which the VE identified him as eligible, specifically, the jobs of "Toll Collector" and "Ticket Taker," if he had to use the bathroom frequently either to urinate or for self-catheterization.

*Carlos Torres v. Commissioner, Social Security Administration*
Civil No. SAG-15-3294
September 20, 2016
Page 6

                                          Sincerely yours,

                                               /s/

                                        Stephanie A. Gallagher
                                        United States Magistrate Judge